IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE J. SMITH, | ) |
| Plaintiff, | ) |
| | ) Case No. 13 C 9119 |
| v. | ) |
| TRANS UNION, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Pro se Plaintiff Maurice J. Smith brought this lawsuit against Defendant Trans Union, LLC ("Trans Union"), a consumer reporting agency, for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Before the Court is Trans Union's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Trans Union's motion and dismisses this lawsuit in its entirety.

**BACKGROUND**

**I.      Northern District of Illinois Local Rule 56.1**

Because Smith is proceeding pro se, Trans Union served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted). "The obligations set forth by a court's local rules are not mere formalities." *Zuppardi v. Wal-Mart Stores, Inc.,* 770 F.3d 644, 648 (7th Cir. 2014).

Although courts construe pro se pleadings liberally, *see Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014), a plaintiff's pro se status does not excuse him from complying with the federal and local procedural rules. *See Collins v. Illinois,* 554 F.3d 693, 697 (7th Cir. 2009) ("even pro se litigants must follow procedural rules"). As the Supreme Court instructs, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

Here, Smith has not filed a response to Trans Union's statement of facts under Local Rule 56.1(b)(3)(B), and therefore, the Court accepts all properly supported assertions in Trans

2

Union's statement of material facts as true to the extent that the facts are supported in the record. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In addition, Smith has not set forth a Rule 56.1(b)(3)(C) statement of additional facts.

## II.     Relevant Facts

On December 20, 2013, Smith filed the present Complaint alleging that Trans Union failed to follow reasonable procedures to ensure the accuracy of his credit information and failed to properly reinvestigate his claims after he complained to Trans Union about the inaccuracies. (R. 1, Compl. ¶¶ 32-43.) In particular, based on Smith's Complaint and his previous credit reporting disputes, Smith is challenging the accuracy of the credit reporting in regard to several adverse bank accounts, a 2011 federal tax lien, and his 2011 Chapter 7 bankruptcy. (R. 48, Def.'s Rule 56.1 Stmt. Facts ¶¶ 8-10.)

More specifically, Smith's first dispute with Trans Union involved Smith calling Trans Union on or before February 19, 2013, at which time Smith contested the ownership and accuracy of his OneWest Bank account and Green Tree mortgage. (*Id*. ¶ 12.) Trans Union investigated these claims by contacting OneWest Bank and Green Tree through the Automated Consumer Dispute Verification ("ACDV") process, informing those entities that Smith "claims inaccurate information" asking that they "provide or confirm complete ID and verify account information." (*Id*. ¶ 13.) Both OneWest Bank and Green Tree responded to the ACDVs on or about March 6, 2013, by making minor updates to the information on the accounts, but otherwise verifying that they were reported accurately. (*Id*. ¶ 14.) On March 16, 2013, Trans Union sent Smith the results of its investigation. (*Id.* ¶ 15, Ex. D, Wilson Decl. ¶ 14.)

Next, on or about March 15, 2013, Smith submitted a dispute to Trans Union via mail stating that his Charter One, First Bankcard, HSBC/Capital One Bank, and Wells Fargo accounts on his credit file had been opened fraudulently and that the bankruptcy and tax lien on his credit report were inaccurate. (Def.'s Stmt. Facts ¶ 16; Wilson Decl. ¶ 15.) Smith attached a police report to his March 15, 2013, correspondence, which states that he told the reporting officer that all of these accounts were part of his bankruptcy filing. (Def.'s Stmt. Facts ¶ 17.) Accordingly, Trans Union investigated the status of his accounts in the bankruptcy proceeding through the bankruptcy court's online docket PACER and the Lexis-Nexis tax lien public record database to test Smith's claims that the disputed information was inaccurate. (*Id*. ¶ 18.) Also, Trans Union initiated an investigation with the furnishers of the credit information for the disputed bank accounts using the ACDV process, informing the furnishers that Smith "claims true identity fraud, account fraudulently opened" and asked that they "provide or confirm complete ID." (*Id*. ¶ 19.) The furnishers verified the accuracy of the accounts, and on April 10, 2013, Trans Union sent Smith the results of its investigation. (*Id*. ¶¶ 20, 21.)

On April 25, 2013, Smith submitted an online dispute to Trans Union claiming that the Chapter 7 bankruptcy did not belong to him, after which Trans Union investigated and verified Smith's bankruptcy petition and resultant discharge of debts through PACER. (*Id*. ¶¶ 22-24.) On April 29, 2013, Trans Union sent Smith the results of its investigation. (*Id*. ¶ 25.) Similarly, on April 29, 2013, Trans Union received another dispute from Smith via mail in which he claimed that he had "never filed bankruptcy" and asked that Trans Union remove the bankruptcy from his credit report. (*Id*. ¶ 26.) Again, Trans Union initiated an investigation through PACER, but then cancelled the investigation because Trans Union had recently verified that Smith had

4

filed for bankruptcy protection. (*Id*. ¶ 27.) Trans Union sent Smith a letter on or about May 1, 2013, informing him that Trans Union had previously verified his bankruptcy. (*Id*. ¶ 28.)

Also, Trans Union initiated an investigation into Smith's First Bankcard, Charter One Bank, People's Energy, OneWest Bank, Green Tree, and Wells Fargo accounts with each of the furnishers through the ACDV process regarding Smith's allegations that these accounts were "included in bankruptcy of another person." (*Id*. ¶ 29.) Trans Union specifically asked these furnishers to verify the consumer information, account status, and current balance. (*Id*.) The furnishers then verified that these accounts were included in Smith's bankruptcy petition. (*Id*. ¶ 30.) On May 23, 2013, Trans Union sent Smith the results of this investigation. (*Id*. ¶ 32.)

Next, on or about May 13, 2013, Trans Union received another dispute from Smith in which he claimed that the tax lien, bankruptcy, and certain adverse accounts were "unverified," and asked that they either be verified or deleted. (*Id*. ¶ 33.) Trans Union then initiated an investigation into this dispute with each of the furnishers of the disputed information through the ACDV process, stating that Smith "claims inaccurate information" and asking that they "provide or confirm complete ID and verify account information." (*Id*. ¶ 34.) The creditors verified the information, except for two creditors who were not longer on Smith's file. (*Id*. ¶¶ 34, 35.) On June 6, 2013, Trans Union sent Smith the results of this investigation. (*Id.* ¶ 36.)

Smith submitted another online dispute to Trans Union on or about June 20, 2013, claiming that the Capital One account was not his, after which Trans Union initiated an investigation with Capital One using the ACDV process, reporting that Smith stated that the account is "not his," and asking that they "provide complete ID." (*Id*. ¶¶ 37, 38.) Capital One responded by verifying that the account was reporting accurately with Smith's name, social

5

security number, and date of birth. (*Id.* ¶ 39.) On or about June 27, 2013, Trans Union sent Smith the results of its investigation. (*Id.* ¶ 40.)

On or about June 24, 2013, Smith sent another written dispute letter to Trans Union that was similar to his May 13, 2013, letter stating that Smith's tax lien, bankruptcy, and certain adverse accounts were "unverified." (*Id.* ¶ 41.) Two of the accounts were not in Smith's credit file, nevertheless, Trans Union initiated an investigation with the remaining credit furnishers using the ACDV process. (*Id.* ¶ 42.) In addition, Trans Union investigated the bankruptcy proceedings via PACER and the tax lien using the public record vendor Lexis-Nexis. (*Id.* ¶ 43.) The furnishers verified Smith's adverse accounts and the tax lien and bankruptcy were also verified. (*Id.* ¶ 44.) On July 20, 2013, Trans Union sent Smith the results of its investigation into these disputes. (*Id.* ¶ 45.)

Moreover, on July 29, 2013, Trans Union received a letter from Smith's bankruptcy counsel requesting that Smith's Capital One account be removed from Smith's credit line because it had been discharged in Smith's 2011 bankruptcy proceedings. (*Id.* ¶ 46.) Shortly thereafter, Trans Union investigated the dispute with Capital One using the ACDV process, stating that Smith "disputes current balance" and "claims account closed," asking that they "verify original loan amount, scheduled monthly payment amount, actual amount, amount past due, current balance and original charge off amount" and that they also "verify account status, date closed and payment rating." (*Id.* ¶ 47.) Trans Union also included a consumer message with the ACDV request informing Capital One that Smith claimed the account had been closed in 2011. (*Id.*) Capital One responded to the ACDV by making minor updates to the account, but otherwise verifying that it was reporting accurately. (*Id.* ¶ 48.) On or about August 7, 2013,

6

Trans Union sent Smith the result of this investigation.  (*Id*. ¶ 49.)

Also on July 29, 2013, Trans Union received a written dispute from Smith in which he claimed that the tax lien, bankruptcy, and certain adverse accounts, including his People's Energy account and another OneWest account on his credit file, were "unverified."  (*Id*. ¶ 50.)  Trans Union removed the OneWest Bank account because the statute of limitations reporting period was approaching and also initiated an investigation into the ownership of the remaining items with the listed furnishers using the ACDV process.  (*Id*. ¶ 51.)  Once again, the tax lien and bankruptcy were verified and Trans Union removed the People's Energy account from Smith's file because People's Energy did not respond to the ACDV request.  (*Id*. ¶ 52.)  Again, the adverse account furnishers verified Smith's other accounts.  (*Id.* ¶ 53.)  Trans Union sent Smith the results of its investigations on August 26, 2013.  (*Id.* ¶ 54.)

On or about August 15, 2013, Smith submitted another written dispute that was nearly identical to several prior disputes in which he claimed the tax lien, bankruptcy, and certain adverse accounts, including his People's Energy and OneWest accounts, were "unverified."  (*Id*. ¶ 55.)  As discussed, the People's Energy and OneWest accounts were no longer on Smith's file.  (*Id.* ¶ 56.)  Nonetheless, Trans Union initiated another investigation into the ownership and accuracy of the remaining items with the furnishers using the ACDV process, informing them that Smith "claims inaccurate information" and asking that they "provide or confirm complete ID and verify account information."  (*Id*.)  Trans Union then cancelled the tax lien and bankruptcy investigations because it had recently verified these accounts.  (*Id*. ¶ 57.)  Meanwhile, the adverse account furnishers verified Smith's information and Trans Union sent the results of this investigation to Smith on September 12, 2013.  (*Id*. ¶¶ 57, 58.)

7

Smith mailed his last written dispute on or about September 6, 2013, in which he challenged the tax lien, bankruptcy, and adverse accounts as "unverified." (*Id*. ¶ 59.) Trans Union then investigated the bankruptcy through PACER and the tax lien using its public record vendor to test Smith's claims that the information is "inaccurate" and to confirm "ID, date, amounts and status." (*Id*. ¶ 60.) Trans Union did not investigate the adverse accounts because the above-mentioned investigations were still pending. (*Id*. ¶ 61.) After verifying the bankruptcy and tax lien, Trans Union sent Smith a letter on September 10, 2013. (*Id*. ¶ 62.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**ANALYSIS**

Construing his pro se Complaint liberally, *see Ambrose,* 749 F.3d at 618, Smith alleges that Trans Union failed to follow reasonable procedures to ensure the accuracy of his credit information and failed to properly reinvestigate after he complained to Trans Union about the inaccuracies. *See* 15 U.S.C. §§ 1681e(b), 1681i(a)(1). Specifically, § 1681e(b) "requires that a credit reporting agency follow 'reasonable procedures to assure maximum possible accuracy' when it prepares a credit report." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (citation omitted); *see also TRW Inc. v. Andrews,* 534 U.S. 19, 23, 151 L.Ed.2d 339, 122 S.Ct. 441 (2001). Once a consumer report exists, the FCRA triggers a consumer reporting agency's duties, such as the obligation to reinvestigate when a consumer claims his report is inaccurate. *See Ruffin–Thompkins v. Experian Info. Solutions,* 422 F.3d 603, 607 (7th Cir. 2005).

To establish that Trans Union failed to follow reasonable procedures to ensure the accuracy of his credit information under § 1681e(b), Smith must first show that his credit report contained inaccurate information. *See Sarver,* 390 F.3d at 971-72; *Johnson v. Trans Union, LLC,* 524 Fed.Appx. 268, 270 (7th Cir. Apr. 8, 2013) (unpublished). Likewise, to establish that TransUnion violated the FCRA's reinvestigation requirement, Smith is also required to show that his credit report contained inaccurate information. *See Johnson,* 524 Fed.Appx. at 270-21 (citing *Wantz v. Experian Info. Solutions,* 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56 & n.8, 71, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)).

Here, Trans Union has presented evidence that Smith's credit report did not contain any inaccurate information—that Trans Union did not remove—as to all of Smith's disputes regarding the adverse accounts, bankruptcy, and tax lien. Accordingly, Smith must present evidence creating a genuine issue of material fact for trial that Trans Union inaccurately reported his credit information. *See Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 627 (7th Cir. 2014) ("summary judgment is proper against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'") (citation omitted). Smith has failed to do so.

Instead, citing non-controlling legal authority, Smith argues that Trans Union simply "parroted" the information it received from the furnishers and credit sources. *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997) (responsibility "imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources"). In this district, the Seventh Circuit's case law is controlling, and the Seventh Circuit has held that "[w]hether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994). Smith does not point to any evidence in the record that he alerted Trans Union to the possibility that the furnishers, bankruptcy docket, or tax lien database were unreliable, nor is there evidence in the record that Trans Union should have known these sources may have been unreliable in the first instance.

Moreover, to survive summary judgment on his FCRA claims, Smith must present evidence raising a genuine material fact for trial that he suffered damages as a result of the inaccurate information. *See Ruffin-Thompkins,* 422 F.3d at 608; 15 U.S.C. §§ 1681o, 168n1. In other words, "[w]ithout a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'" *Crabill v. Trans Union, LLC,* 259 F.3d 662, 664 (7th Cir. 2001) (citations omitted); *see also Lamar v. Experian Info. Sys.,* 408 F.Supp.2d 591, 597 (N.D. Ill. 2006) ("Just as under Section 1681e(b), to prevail on a Section 1681i(a) claim [a plaintiff] 'must show that he suffered damages as a result of the inaccurate information.'") (quoting *Ruffin-Thompkins*, 422 F.3d at 608). To obtain statutory and punitive damages under the FCRA, a plaintiff must establish that the consumer reporting agency wilfully violated the Act. *See Redman v. RadioShack Corp.,* 768 F.3d 622, 627 (7th Cir. 2014); 15 U.S.C. § 1681n.

First, Smith has failed to establish actual damages under §1681o. Specifically, in response to Trans Union's interrogatories asking him about his alleged emotional distress, Smith stated that he "had not sought treatment as of this date." (Def.'s Stmt. Facts ¶ 65.) When asked at his deposition whether he wanted to add anything to this response, Smith answered no. (*Id*.) In addition, Smith has failed to elaborate on his emotional injuries in his legal memorandum. It is well-settled that the Seventh Circuit has "maintained a strict standard for a finding of emotional damage because they are so easy to manufacture." *Sarver,* 390 F.3d at 971 (citation and quotation marks omitted). In particular, when "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Id.* (citation omitted). Here, Smith has failed to

11

present sufficient evidence creating a genuine issue of material fact for trial to meet this burden.

Also, in response to Trans Union's interrogatories concerning his actual damages, Smith spoke in generalities, namely, that "inaccurate and unverified information published in a consumer's credit report will usually lower the credit score of the consumer and thus make it more difficult for the consumer to obtain credit" and "the cost of credit and insurance will be much higher than if the unverified information was removed from the credit report." (R. 48-17, Resp. Interrog. ¶ 7.) Smith further responded that "[u]nverified information on a consumer's credit report could also prevent a consumer from getting a job and[/]or a promotion." (*Id.*) At no point does Smith present evidence that he had a difficult time obtaining credit or that his credit and/or insurance cost more due to the alleged inaccuracies on his credit file. Moreover, Smith does not set forth evidence or argument that his credit report prevented him from getting a job or promotion. Without more, Smith has failed to establish actual damages under § 1681o. *See Celotex,* 477 U.S. at 322 ("plain language of Rule 56[a] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

In support of his argument that he is entitled to statutory and punitive damages, Smith asserts that Trans Union acted willfully because it merely "parroted" the information it received from the furnishers of information. *See Campbell v. Chase Manhattan Bank, USA*, *N.A.,* Case No. Civ. A. 02-3489 (JWB), 2005 WL 1514221, at *16 (D.N.J. June 27, 2005). A willful violation of the FCRA requires that the credit reporting agency acted knowingly or in reckless disregard of violating the FCRA. *See Safeco Ins. Co. v. Burr,* 551 U.S. 47, 57-58, 127 S.Ct.

12

2201, 167 L.Ed.2d 1045 (2007). As discussed, the controlling law of the Seventh Circuit is that credit reporting agencies need not independently verify information provided by creditors unless the credit reporting agency has prior knowledge that the source is unreliable. *See Henson,* 29 F.3d at 285. As such, Smith's argument that Trans Union's alleged "parroting" establishes Trans Union's willful conduct is not a reasonable inference based on the facts of this case, but mere speculation that does not defeat Trans Union's summary judgment motion. *See Cung Hnin v. TOA (USA), LLC,* 751 F.3d 499, 508 (7th Cir. 2014).

Because Smith has failed to set forth evidence creating a genuine issue of material fact for trial regarding the inaccuracies in his credit report or that he suffered damages from these alleged inaccuracies, the Court grants Trans Union's summary judgment motion. *See Anderson*, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading.").[1]

---

[1] In his response brief, Smith states that § 1681g(a)(1) of the FCRA asserts "[e]very consumer reporting agency shall, upon request...clearly and accurately disclose to the consumer ...[a]ll information in the consumer's file at the time of the request." Smith, however, does not assert when he requested Trans Union to provide copies of documents or point to evidence in the record supporting that he requested his "file" under § 1681g(a)(1). Thus, Smith has waived this unsupported and underdeveloped argument. *See Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 626 -27 (7th Cir. 2014).

## CONCLUSION

For these reasons, the Court grants Trans Union's summary judgment motion and dismisses this lawsuit in its entirety.

**Dated:** March 12, 2015

                                         **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**